J-S77007-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| v. | |
| JOHN ROSS KENT | |
| Appellant | No. 415 MDA 2016 |

Appeal from the Judgment of Sentence February 18, 2016
In the Court of Common Pleas of Centre County
Criminal Division at No(s): CP-14-CR-0000839-2014

BEFORE:  PANELLA, J., OLSON, J., and PLATT, J.*

MEMORANDUM BY PANELLA, J.                    **FILED JANUARY 12, 2017**

Appellant, John Ross Kent, appeals from the judgment of sentence entered in Centre County Court of Common Pleas, following his bench trial convictions for three counts of criminal trespass, one count of stalking, and fifteen counts of invasion of privacy.[1] After careful review, we affirm.

---

[1] 18 Pa.C.S.A. §§ 3503(a)(1)(i), 2709.1(a)(2), 7507.1(a)(1), respectively.

Preliminarily, we note that subsections (b.1)(1)(iv) and (b.1)(2) of § 3503, **Criminal trespass**, were recently declared unconstitutional in **Leach v. Commonwealth**, 141 A.3d 426 (Pa. 2016) (holding that 18 Pa.C.S.A. § 3503(b.1)(1)(iv), (b.1)(2) violates the single-subject rule of Article III, Section 3 of the Pennsylvania Constitution). However, we note the holding in **Leach** does not affect our disposition in the instant case because Appellant was sentenced under subsection (a)(1)(i).

---

* Retired Senior Judge assigned to the Superior Court.

The relevant facts and procedural history of this case are as follows. G.B. ("Ms. B.") met Appellant in August 2012 and began dating him. The couple lived apart from one another, but often Appellant and Ms. B would plan weekend visits at her home in Boalsburg, Pennsylvania. Appellant was not permitted to simply show up at Ms. B's home without her knowledge. And when Appellant stayed at Ms. B's home he would retire to the living room. Ms. B indicated that she did not allow Appellant to enter her bedroom because she kept that room a personal space and because her son was in the home often.

Ms. B and Appellant were an intimate couple and usually were engaged in intimate activities in the living room, which had a front bay window, where Appellant stayed. Appellant made an offer of proof that he and Ms. B regularly engaged in "adventurous" intimacy in public places. For example, Appellant submitted the couple had sexual intercourse on Moon River in Canada, in the afternoon on the front of his boat while other boats passed by, in Ms. B's driveway at dusk, on a motorcycle where friends caught them, in Appellant's car and hot tub, and on Ms. B's back deck.

In the daylight hours of March 3, 2014, Ms. B and Appellant were engaged in intimate activities in her living room. During the intimacy in a state of full nudity and without Ms. B's knowledge or consent, Ms. B noticed that Appellant had recorded the moment on his phone. After Ms. B confronted Appellant regarding the phone in his hand, Appellant admitted to

recording the moment and told Ms. B he would delete it from his phone. Ms. B became distraught, threw him, along with all of his personal belongings, out of the house, and immediately ended the relationship. Ms. B did not speak to Appellant and Appellant was not permitted to enter her house following the incident.

The next day, Ms. B contacted a local women's clinic regarding the events because she was concerned other images may have existed of which she might not have been aware. A clinic representative put Ms. B in contact with Detective Deidri Houck, who ultimately executed a search warrant to seize Appellant's phone. Detective Houck discovered that over seven hundred photos and a few videos were taken on Appellant's phone between February 3, 2014, to March 14, 2014, that were related to Ms. B. Some of the photos and videos were of Ms. B's nude body; other pictures were of Ms. B's personal effects that Appellant would not have known existed without his searching through Ms. B's home to discover them.

Some of the pictures depict private memorabilia of Ms. B's deceased infant child, her phone, driver's license, social security card, son's birth certificate, sister's will, personal emails and calendar, various passwords, and trash, among other things. Some of these pictures were taken at various times in the middle of the night while the couple was dating without her knowledge. Others were taken after Ms. B ended the relationship, where Appellant entered her property to take pictures of her through the front bay

window while she was asleep in the living room, and where Appellant separately entered her house without her permission to take pictures of some of the above-listed items. On those occasions, Appellant entered the house through her garage by entering a password she had previously given him.

After Ms. B discovered that Appellant took these pictures and videos, she began checking her doors and windows, changed the password on her garage, and placed security cameras in the house. Ms. B testified that the discovery of Appellant's pictures shocked her, and affected her daily life and the safety she previously felt in her home.

The Commonwealth charged Appellant with three counts of criminal trespass, one count of stalking, and fifteen counts of invasion of privacy on April 21, 2014. Appellant waived his preliminary hearing, requested a jury trial, but later pled guilty to various charges. Thereafter, after retaining new counsel, Appellant entered an oral motion to withdraw his guilty plea; the court accepted Appellant's motion.

On August 3, 2015, Appellant filed a motion to compel the Commonwealth to turn over Appellant's phone so that Appellant's expert could do an independent forensic analysis of the phone. Following briefing and argument on the motion to compel, the court entered an opinion and order denying Appellant's motion.

On October 13, 2015, the Commonwealth filed a motion to preclude Appellant's expert report and testimony, which included an opinion on Appellant's lack of dissemination of the photos and videos and the likelihood of Ms. B's consent regarding them, as irrelevant to any admissible evidence. The Commonwealth argued the expert opinion involved evidence that did not exist, alleging the phone would "likely" reveal text messages that could "possibly" have been deleted and which "could have" proven her consent.

On October 19, 2015, Appellant filed a request for a bill of particulars *nunc pro tunc*, seeking additional facts from the Commonwealth that formed the bases for Appellant's stalking and invasion of privacy charges. On October 26, 2015, Appellant also filed a petition for *habeas corpus* arguing the Commonwealth failed to establish a *prima facie* case regarding the stalking charge because Appellant did not repeatedly communicate with Ms. B and regarding the invasion of privacy charge because she could not have possessed a reasonable expectation of privacy when she was being intimate with Appellant.

At a hearing on the above motions, Appellant argued that the Commonwealth did not establish a *prima facie* case for invasion of privacy because Ms. B was not in a private setting when she was engaged in sexual intimacy with Appellant. Appellant made an offer of proof regarding the couple's prior sexual history and subsequently made an oral motion *in limine* to introduce it. Appellant also challenged the constitutionality of the invasion

of privacy statute, arguing it should be void for vagueness on its face and as applied to Appellant. The court denied Appellant's *habeas corpus* petition and request for a bill of particulars, and his motion *in limine* as irrelevant. The court also disagreed with Appellant's interpretation of the statute and denied Appellant's motion to declare it unconstitutional.

In an opinion and order, the court granted the Commonwealth's motion to preclude Appellant's expert testimony on the grounds that the testimony would be irrelevant and would serve to confuse the jury because the jury would speculate and assume that dissemination of the images did occur, when Appellant was not charged with any crime involving dissemination.

A bench trial was held on November 5, 2015, and the court found Appellant guilty of the above-listed charges. The court later sentenced Appellant at each count to an aggregate total of 36 months to 72 month's imprisonment, followed by 4 years of probation, and to pay a fine and the costs of prosecution. The court also noted Appellant was not found to be a sexually violent predator. Appellant filed a timely notice of appeal. The court ordered Appellant to file a Rule 1925(b) concise statement of errors complained of on appeal. Appellant timely complied. In his first issue,[2] Appellant challenges the constitutionality of 18 Pa.C.S.A. § 7507.1,

_____

[2] For ease of disposition, we have rearranged Appellant's issues.

**Invasion of privacy**. Appellant argues § 7507.1 is void for vagueness because it does not give an ordinary person notice of the forbidden conduct. Appellant concedes that Pennsylvania courts examine whether statutes give fair notice under an *objective* test. But he insists on a *subjective* standard for his case. An objective standard, he maintains, is inappropriate under these circumstances because he would not have "known," as the statute's proscribed *mens rea* states, that he was prohibited from videoing Ms. B while she was in a state of nudity and without her consent, because of the couple's prior sexual history. Appellant contends the phrase "in a place where that person would have a reasonable expectation of privacy" should likewise be reviewed under a subjective test. He reasons that he and Ms. B were engaged in consensual intimate activities and, as a result, she could not have possessed a reasonable expectation of privacy because she was not alone.

In the same vein, Appellant argues the statute is unconstitutionally vague because it affords police unfettered discretion in making arrests. Specifically, Appellant complains the statute fails to define or provide examples of what constitutes "privacy." Appellant maintains this uncertainty surrounding the term "privacy" will lead police to determine what amounts to an invasion of privacy on an *ad hoc* and subjective basis. Appellant concludes that the statute is void for vagueness. We disagree.

The constitutionality of a statute is a question of law; therefore, the scope of appellate review is plenary. *See Commonwealth v. Moss*, 852 A.2d 374, 379 (Pa. Super. 2004). "The constitutional validity of duly enacted legislation is presumed. The party seeking to overcome the presumption of validity must meet a formidable burden." *Commonwealth v. Haughwout*, 837 A.2d 480, 487 (Pa. Super. 2003) (citing *Commonwealth v. Means*, 773 A.2d 143 (Pa. 2001)). "A statute will not be declared unconstitutional unless it clearly, palpably, and plainly violates the Constitution; all doubts are to be resolved in favor of a finding of constitutionality." *Commonwealth v. Mayfield*, 832 A.2d 418, 421 (Pa. 2003) (internal citations and quotation marks omitted).

"The void for vagueness doctrine, as extensively developed by the United States Supreme Court, is a due process doctrine incorporating notions of fair notice and warning." *Commonwealth v. Potts*, 460 A.2d 1127, 1133 (Pa. Super. 1983). When an appellant raises a void for vagueness challenge to a statute

> [t]he terms of a penal statute creating a new offense must be sufficiently explicit to inform those who are subject to it what conduct on their part will render them liable to its penalties . . . . A statute which either forbids or requires the doing of an act in terms so vague that [people] of common intelligence must necessarily guess at its meaning and differ as to its application violates the first essential of due process of law. The void for vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement.

> Due process is satisfied if the statute provides reasonable standards by which a person may gauge his future conduct.

*Mayfield*, 832 A.2d at 422 (internal citations and quotation marks omitted).

> In considering these requirements, both High Courts have looked to certain factors to discern whether a certain statute is impermissibly vague. For the most part, the Courts have looked at the statutory language itself, and have interpreted that language, to resolve the question of vagueness. In doing so, however, our Court has cautioned that a statute is not to be tested against paradigms of legislative draftsmanship, and thus, will not be declared unconstitutionally vague simply because the Legislature could have chosen clear and more precise language. ... The Courts have also looked to the legislative history and the purpose in enacting a statute in attempting to discern the constitutionality of the statute. Consistent with our prior decisions, as well as United States Supreme Court case law, we will first consider the statutory language employed by the General Assembly in determining whether Section 2506 is unconstitutionally vague.

*Commonwealth v. Ludwig*, 874 A.2d 623, 628–29 (Pa. 2005) (citations, footnote and quotation marks omitted).

The statute challenged here, as listed in the Pennsylvania Crimes Code, defines invasion of privacy, in pertinent part, as follows:

> **§ 7507.1 Invasion of Privacy**
>
> **(a) Offense defined.—**
>
> Except as set forth in subsection (d), a person commits the offense of invasion of privacy if he, for the purpose of arousing or gratifying the sexual desire of any person, knowingly does any of the following:
>
> (1) Views, photographs, videotapes, electronically depicts, films or otherwise records another person without that person's knowledge and consent while that person is in a state of full or partial nudity and is in a place where that person would have a reasonable expectation of privacy.

The crime described above consists of four principal elements: (i) knowingly views, photographs, videotapes, electronically depicts, films or otherwise records another person; (ii) without that person's knowledge or consent; (iii) while that person is in a state of full or partial nudity; and (iv) that person in a place where he or she would have a reasonable expectation of privacy. "It is sufficiently definite that ordinary people can understand what conduct is prohibited, and is not so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application." *Mayfield*, 832 A.2d at 423 (internal quotation marks and citations omitted).

Accordingly, we reject Appellant's argument that § 7507.1 should be reviewed under a *subjective* standard because such a request directly contravenes the void for vagueness jurisprudence, which mandates an *objective* standard. *See*, *e.g.*, *id*., at 422; *Commonwealth v. Mikulan*, 470 A.2d 1339, 1342 (Pa. 1983); *Commonwealth v. Heinbaugh*, 354 A.2d 244, 246 (Pa. 1976); *Commonwealth v. Kakhankham*, 132 A.3d 986, 991 (Pa. Super. 2015), *appeal denied*, 138 A.3d 4 (Pa. 2016).

Additionally, the trial court provided the following analysis of Appellant's void for vagueness argument:

> Appellant bases his constitutionality argument on the claim that an individual cannot have a "reasonable expectation of privacy" pursuant to Section 7507.1(e) when she is actively engaged in sexual intercourse with another individual. Appellant buttresses this claim with his contention that Section 7501.1 does not

contain a definition for the word "privacy" and that the common definition of the word precludes a conviction on the facts of this case. While Appellant is correct in the sense that Section 7507.1 does not delineate a freestanding definition for "privacy," Section 7507.1(e) does clarify that a reasonable person disrobes in privacy where she is not concerned that her undressing is being viewed, photographed, or filmed by another. This clarification is accomplished through the inclusion of the prepositional phrase, "without being concerned that his [or her] undressing was being viewed, photographed or filmed by another." The subject of the prepositional phrase is "privacy," and the subject is modified to incorporate not "being viewed, photographed or filmed by another." A victim's "privacy" under Section 7507.1 is inextricable from the victim being in a place where she can undress without being viewed, photographed, or filmed by another. The Merriam-Webster Dictionary definition of "privacy" includes "the state of being away from public attention." Thus, "privacy" under Section 7507.1 is recognized as an individual in the state of being away from public attention without being concerned that her undressing is being viewed, photographed, or filmed by another.

Appellant also contends the [c]ourt's refusal to accept Appellant's interpretation of Section 7507.1 precluded questioning of the victim about her sexual history with Appellant and Appellant's argument that the victim had knowledge of Appellant's recording and photographing of their sexual interactions. The [c]ourt found Appellant's theory of the case to be irrelevant to the plain meaning of Section 7507.1. The statute requires the recording and photographing to be done "without that person's knowledge and consent." The inverse, and thus non-proscribed form of this requirement, is that the person knows and consents to the recording and photographing. Appellant attempts to fashion a zone between these two forms which would permit an individual to record and photograph his sexual interactions with another person without their consent, and then make the other person aware of the recordings and photographs so that the statute does not apply. This incongruous and perplexing interpretation by Appellant would, if adopted, result in invasions of privacy only occurring when a victim does not discover said invasions. The [c]ourt found the plain meaning of Section 7507.1 to be clear, and additionally that the legislature could not have intended for the statute to be the innocuous section Appellant alleges it to be.

- 11 -

Appellant subscribes to the erroneous logic that because the [c]ourt and Appellant have differing interpretations of Section 7507.1, it must therefore be void for vagueness. An endorsement of this illogical notion would result in defendants being able to assert an incorrect interpretation of a statute and then claim the statute is void for vagueness when the [c]ourt applies the correct interpretation. The [c]ourt cannot endorse Appellant's illogical position.

Trial Court Opinion, filed 4/11/16, at 3-5. We agree entirely with the trial court's cogent analysis.

As applied to Appellant, § 7507.1 could not be any clearer. The record shows that Appellant knowingly photographed and recorded Ms. B— without her knowledge or consent while she was in a state of nudity in her home. The record also indicates that Appellant and Ms. B were engaged in intimate activities inside her home, where Ms. B would have possessed an eminently reasonable expectation of privacy. *See Commonwealth v. Flewellen*, 380 A.2d 1217, 1220 (Pa. 1977) ("Upon closing the door of one's home to the outside world, a person may legitimately expect the highest degree of privacy known to our society."); *Commonwealth v. Kean*, 556 A.2d 374, 382 (Pa. Super. 1989) ("[A] citizen of this Commonwealth may maintain a legitimate expectation of privacy in the home notwithstanding the fact that the interior of the home is secretly videotaped by a guest."); *see also United States v. Chadwick*, 433 U.S. 1, 7, 97 S. Ct. 2476, 2481, 53 L. Ed. 2d 538 (1977), *abrogated by* *California v. Acevedo*, 500 U.S. 565, 111 S.

Ct. 1982, 114 L. Ed. 2d 619 (1991).[3] Appellant's conduct is precisely what the legislature intended to proscribe when it enacted the statute. Accordingly, § 7507.1 is not unconstitutionally vague.

We next address Appellant's second and third issues together. Appellant argues the trial court impermissibly prohibited the introduction of Appellant and Ms. B's prior sexual history as irrelevant. Appellant posits that evidence of the couple's prior sexual history negates the *mens rea* of the offense, and therefore, is indeed relevant because it tends to show that Appellant believed Ms. B would not mind having their intimacy recorded based on their prior public intimacy exhibitions. Appellant similarly contends that the trial court impermissibly precluded the introduction of Appellant's expert opinion and report. Appellant submits the report is relevant because it tends to show that no dissemination of the photos or videos occurred, which Appellant insists rebuts an element of his stalking conviction. We disagree.

"Admission of evidence is within the sound discretion of the trial court and will be reversed only upon a showing that the trial court clearly abused its discretion." **Commonwealth v. Drumheller**, 808 A.2d 893, 904 (Pa. 2002) (quoting **Commonwealth v. Stallworth**, 781 A.2d 110, 117 (Pa.

---

[3] Although this Court is not bound by fourth amendment precedent because this case does not involve unreasonable search and seizures perpetrated by the government, in this instance, we find some of the fundamental tenets of doctrine persuasive.

2001)).

Relevance is the threshold for admissibility of evidence. ***Commonwealth v. Cook***, 952 A.2d 594, 612 (Pa. 2008). Pennsylvania Rule of Evidence 401 provides as follows:

**Rule 401. Test for Relevant Evidence**

Evidence is relevant if:

(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and

(b) the fact is of consequence in determining the action.

Pa.R.E. 401. Evidence is relevant if it logically tends to establish a material fact in the case, tends to make a fact at issue more or less probable, or supports a reasonable inference or presumption regarding a material fact. "All relevant evidence is admissible, except as otherwise provided by law. Evidence that is not relevant is not admissible." Pa.R.E. 402. "The court may exclude relevant evidence if its probative value is outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Pa.R.E. 403.

Pennsylvania Rule of Evidence 404(b) provides as follows:

**Rule 404.  Character Evidence; Crimes or Other Acts**

*   *   *

**(b)   Crimes, Wrongs or Other Acts.**

*(1)   Prohibited Uses.*   Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.

*(2)   Permitted Uses.*   This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. In a criminal case

- 14 -

this evidence is admissible only if the probative value of the evidence outweighs its potential for unfair prejudice.

\* \* \*

Pa.R.E. 404(b)(1)-(2).

***Commonwealth v. Tyson***, 119 A.3d 353, 358 (Pa. Super. 2015) (*en banc*)

(some citations and quotation marks omitted).

The Pennsylvania Crimes Code defines stalking, in pertinent part, as follows:

**§ 2709.1 Stalking**

**(a) Offense defined.—** A person commits the crime of stalking when the person[:]

\* \* \*

(2) ***engages in a course of conduct*** or repeatedly communicates to another person under circumstances which demonstrate or communicate either an intent to place such other person in reasonable fear of bodily injury or to cause substantial emotional distress to such other person.

(emphasis added).

Instantly, the trial court provided the following reasoning for its refusal to admit Appellant and Ms. B's prior sexual history and Appellant's expert opinion and report into evidence:

Appellant contends the [c]ourt erred in precluding any mention of the prior sexual history between Appellant and [Ms. B]. The [c]ourt found any evidence regarding a prior sexual history between Appellant and [Ms. B] was irrelevant to the elements of the criminal charges against Appellant.

- 15 -

The prior sexual history between Appellant and [Ms. B] was irrelevant to whether Appellant knowingly recorded and photographed the victim, without the victim's knowledge and consent, while the victim was in a state of full for partial nudity in a place where the victim would have a reasonable expectation of privacy. The existence of sexual relations between individuals is in no way a precursor or tacit sanctioning of the recording or photographing of those sexual interactions.

\* \* \*

Appellant contends the [c]ourt erred in precluding any mention that the photographs and videos were not disseminated. The [c]ourt found any evidence regarding the dissemination or lack of dissemination of the photographs and videos was irrelevant to the elements of the criminal charges against Appellant.

The Commonwealth never alleged Appellant disseminated the photographs and videos. Likewise, the Commonwealth did not charge Appellant with any crime involving dissemination. Since no element of any crime Appellant was charged with relates to dissemination, any evidence thereof is wholly irrelevant.

Trial Court Opinion, filed 4/11/16, at 8. We agree. The record supports the trial court's conclusion; therefore, we see no reason to disturb it. **See Drumheller**, 808 A.2d at 904; **Tyson**, 119 A.3d at 358; Pa.R.E. 401.

In his final issue, Appellant argues the trial court should have compelled the Commonwealth, pursuant to Rule 573 of the Pennsylvania Rules of Criminal Procedure, to make Appellant's phone available to him for additional forensic testing because the testing would have shown that the photos and videos were not disseminated, which Appellant insists negates an element of his stalking conviction. Specifically, Appellant complains that the Commonwealth's logical acquisition forensic analysis of the phone was an insufficient data extraction compared to Appellant's more thorough file

system acquisition data extraction and forensic analysis. Appellant further states the additional testing would have ensured that the jury would not have convicted Appellant for some improper reason, namely that he shared the pictures and videos with others. Based on the foregoing, Appellant submits that he presented a "plausible reason" as to why additional testing would be material for the defense, in order for the court to compel the Commonwealth to turn the phone over to Appellant. Appellant concludes this Court should reverse his convictions and sentences and grant him a new trial for which he is permitted to obtain access to the phone to complete a full forensic analysis. We disagree.

Appellate courts generally review the grant or denial of discovery requests for an abuse of discretion. *See Commonwealth v. Williams*, 732 A.2d 1167, 1175 n.5 (Pa. 1999).

Pennsylvania Rule of Criminal Procedure 573(B)(1) provides, in relevant part:

**Rule 573.  Pretrial Discovery and Inspection**

* * *

**(B) Disclosure by the Commonwealth.**

(1) *Mandatory*.  In all court cases, on request by the defendant, and subject to any protective order which the Commonwealth might obtain under this rule, the Commonwealth shall disclose to the defendant's attorney all … requested items or information, provided they are material to the instant case.  The Commonwealth shall, when applicable, permit the defendant's attorney to inspect and copy or photograph such items.

- 17 -

(a) Any evidence favorable to the accused that is material either to guilt or to punishment, and is within the possession or control of the attorney for the Commonwealth;

\* \* \*

(f) any tangible objects, including documents, photographs, fingerprints, or other tangible evidence[.]

\* \* \*

While an appellant is not obligated to divulge his entire theory of the case in order to obtain the requested testing, he nevertheless is required to present some plausible reason to the trial court as to why the testing would be material to his defense. *See Commonwealth v. Briggs*, 12 A.3d 291, 327 (Pa. 2011).

Here, the trial court provided the following reasoning regarding its denial of Appellant's motion to compel:

In this case, [Appellant] has failed to present to the [c]ourt a plausible reason as to why a further search of [Appellant's] cellphone by [Appellant's] expert would be material to [Appellant's] defense. The evidence that [Appellant] alludes to is not in the possession of the Commonwealth because, by [Appellant's] own admission, the evidence is not known to definitively exist. The [c]ourt understands [Appellant's] contention that [Appellant] cannot know precisely the nature of the data that might still be undiscovered on [Appellant's] cellphone, but [Appellant] has not provided the [c]ourt with any reason beyond an assertion that exculpatory evidence could possibly reside on the cellphone. The Commonwealth is under no duty to disclose to [Appellant] evidence that it does not possess and of which it is unaware, and the [c]ourt cannot compel the Commonwealth to disclose such evidence to [Appellant] without a plausible reason being presented.

Trial Court Opinion, filed 9/15/15, at 2. The record supports the trial court's reasoning.

We further observe the Commonwealth achieved a complete and successful data extraction using a specific software program, which formed the basis of the nineteen charges against Appellant. And the Commonwealth duly provided Appellant with digital copies of all information recovered from the phone. *See* Pa.R.Crim.P. 573(B)(1). Thus, Appellant failed to present a plausible reason to the trial court as to why the *additional* testing would be material to his defense. His request was speculative, cumulative in nature, and unnecessary given the information Appellant already possessed. *See Briggs*, 12 A.3d at 326. Accordingly, the trial court properly denied Appellant's motion to compel the discovery evidence.

Judgment of sentence affirmed.

Judge Platt joins the memorandum.

Judge Olson concurs in the result.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>1/12/2017</u>